ISAAC V. FRENCH, as RECEIVER OF THE CENTRAL PARK SAVINGS BANK IN THE CITY OF NEW YORK, APPELLANT, *v.* JOSEPH E. REDMAN AND OTHERS, RESPONDENTS.

*Trustees of savings bank — purchase of real estate by — when unauthorized.*

A savings bank in New York was incorporated in 1867. During the years 1867, 1868 and 1869 the expenditures exceeded the receipts; in 1870 and 1871 the receipts were in excess of the expenditures, and in 1872 and 1873 the expenditures again exceeded the receipts. In the latter year the trustees of the bank purchased four lots, three of which were sold, and on the fourth a banking-house was erected. This action was brought by a receiver of the bank against the trustees to recover damages alleged to have been sustained by the bank from such purchase, on the ground that, as the charter limited the power of the trustees to purchase real estate to a lot and banking-house, that the purchase of the four lots by the trustees when they needed but one, and the purchase of even one lot in the then condition of the bank, was an abuse of discretion, and illegal and unauthorized.

*Held*, that the question as to whether or not the purchase of the land, considering the financial condition of the bank, was a reasonable exercise of the discretion vested in the trustees, was a question for the jury, and that it was error for the court to withdraw that question from them.

APPEAL from a judgment dismissing the complaint entered at the Circuit, and from an order allowing separate bills of costs to each of the defendants.

The action was brought by the plaintiff, as receiver of the Central Park Savings Bank, against ten of its trustees to recover some $15,000 claimed to have been lost by reason of an illegal purchase of real estate. The power of the trustees to purchase real estate was limited by the amended charter to "a lot and banking-house requisite for the transaction of its business, and for an income from such parts of the same as are not required for its own use." By deed dated May 1, 1873, the bank bought of Anson Backus a piece of land at the north-west corner of Third avenue and Forty-eighth street, in the city of New York, for $74,500. The premises embraced four lots, three fronting on Third avenue, and one in the rear, fronting on Forty-eighth street. The conveyance was not made directly to the bank, but was made to Gearty, Cary and Redman, three of the trustees, who afterwards conveyed as the bank

directed. The trustees, however, bought for the bank, and the consideration was paid by the bank's money. Subsequently they conveyed lot No. 1 to the bank and a banking-house was erected thereon. The other three lots they conveyed to different individuals. Counsel for plaintiff claimed, taking the transaction as a whole, and charging the cash paid out, with broker's fees, interest, taxes, etc., down to the time the receiver was appointed, and crediting the prices received for the parts sold, with interest, and estimating the lot on hand (as distinguished from the lot and building), there was, in round numbers, a loss of $15,205.55. It was also claimed by him that the bank was insolvent at the time of the purchase. It appeared that the bank was incorporated in 1867; that during the years 1867, 1868 and 1869 the expenditures exceeded the receipts; that during the years 1870 and 1871 the receipts were in excess of the expenditures, and that in 1872 and 1873 the expenditures again exceeded the receipts.

Plaintiff on the trial claimed: First, that the purchase of four lots, when one only was requisite for, and intended for, a banking-house, was illegal, and subjected the trustees concerned in it to all the loss sustained thereby. The defendants claimed that the loss, if any, in the transaction was on the corner lot, No. 1, the purchase of which, if it had been made alone, was authorized by the charter. The plaintiff claimed that the purchase being in gross, it was impossible to distinguish or apportion the loss, and that the defendants were liable for the whole. Secondly, the plaintiff claimed that in the then condition of the bank, which was insolvent, and had been running behind for several years, it was an act of gross negligence and mismanagement (even if the purchase of all the lots were legal) to invest all the available assets in a bank building. And the plaintiff asked to go to the jury on this question.

The court disposed of the first point by holding that the evidence showed that the three lots, Nos. 2, 3 and 4, did not cause a loss. On the second point, the court held that there was no evidence of a want of due care, skill and judgment sufficient to go to the jury on.

*F. C. Barlow,* for the appellant. As to the gross negligence of the trustees in making the purchase in view of the financial condition of the bank, the counsel cited: *Pontchartrain Railroad Company* v.

*Paulding* (11 Louis [O. S.], 41 ; 6 Louis Cond. R., 30) ; *Percy* v. *Millondon* (3 Louis [O. S.], 568 ; 2 Louis Cond. R., 364) ; *Attorney-General* v. *Sutton* (1 Craig & Phil., 1) ; Morse on Banking [ed. of 1870), 116 *et seq.* Some point was made that certain of the trustees were not present at the meetings at which the purchase was made, and hence are not liable. Trustees are not heard to say that they did not know the acts of their corporations. (See *Palmer* v. *Yates*, 3 Sand., 127, and at pp. 159, 160 ; *Osgood* v. *Laytin*, 5 Abb. [N. S.], 1, and at p. 9 ; Morse on Banking [ed. of 1870], at foot of p. 118 ; *Bank Comrs.* v. *Bk. of Buffalo*, 6 Paige, 497.)

*E. Ellery Anderson*, for the respondents. Trustees are not liable for losses resulting from mistake either of fact or of law. (*Scott* v. *De Peyster*, 1 Edw. Ch., 513 ; *Miller* v. *Proctor*, 20 Ohio St., 442 ; *Gobold* v. *Branch Bk. of Mobile*, 11 Ala., 191 ; *Hodges* v. *N. E. Screw Co.*, 1 R. I., 312 ; *Harman* v. *Tappenden*, 1 East, 555 ; *Overend* v. *Gurney*, 4 Ch. Ap., 701 ; Green's Brice's Ultra Vires, note, 407, 408.)

BRADY, J. :

Assuming that the purchase of four plots of land were necessary for the banking-house contemplated by the resolution to build, it appears that three of the plots were sold, and as the result the plot left cost $29,250. This, it would seem from the evidence, was a fair price for it when purchased, although by the depreciation in real estate it was not worth more than $22,000 when this action was tried. If it was fairly worth the sum which it cost when it was bought, then no charge of improvidence or wrong can be sustained unless the purchase itself, under the then existing circumstances, was wholly unwarranted. It is a notorious fact that real estate has, during the period of five years last past, depreciated in all the States and in Europe, a result from causes to which it is not necessary to refer. It is equally notorious that loans made upon real estate in this county, and elsewhere situate, and by corporations exercising care, have not been realized by the sale of the securities pledged, owing to the depreciation mentioned.

The difference between the values of 1873, 1875, 1876 and 1877 are easily accounted for, therefore, and readily understood. The

mere fact of the depreciation is consequently insufficient to sustain any charge of wrong done, and suggests the inquiry, as already intimated, whether the purchase was unjustifiable. The bank was not at the time the land was selected a success, and nothing in the case revealed warrants the conclusion that it would be. During its existence, except for the years 1870 and 1871, its outlays were more than its receipts; and in 1872, the year succeeding the last prosperous year, the amounts paid out exceeded the sums received by more than $2,000. The land was purchased in 1873, and in the year succeeding that in which as just stated the outlays exceeded the receipts. How could it, then, be possible that any new building was necessary for the business of the bank beyond what it occupied, and if it was not, how can the purchase of the excessive plots be construed as other than an intention to speculate, and thus, if successful, increase the assets of the bank? It is true that the right to the exercise of their judgment and discretion may protect its officers, but these elements of human action must rest upon something other than mere caprice, and upon something which has substance, some thing which business men would estimate as of value, and sufficient for operations connected with the subject to which it related. For these reasons, without any extended examination of the authorities kindred to the subject, it is quite apparent that whether the discretion was abused is a question for determination. The learned justice presiding at the trial so treated the issues presented. He proclaimed that there was nothing in the case to show that at the time the purchase was made it was such an excess of authority on their part or such a want of judgment as to make them personally liable for the result. In this we think he may have been mistaken, and that under the circumstances the question was a proper one for the jury to consider and decide. The facts detailed are sufficient to demonstrate that a jury might regard the purchase as one which the financial condition of the bank did not at all warrant, and draw thence the conclusion of wrong intended or liability incurred by unjustifiable expenditure.

The defendants would have the benefit on the investigation of the charge against them of such evidence as they might present in defense, and of the doctrines of ignorance of the facts, of innocence and of good faith so far as they could be applied, and might clearly

exculpate themselves from all imputation. The evidence given called upon them to respond. There was a *prima facie* case against them, which demanded consideration at the hands of the jury. The respondents placed great confidence in the case of *Scott* v. *De Peyster* (1 Edw. Ch., 513), and with some plausibility, as an authority for the proposition that on the facts disclosed the defendants are relieved from all liability, there being no charge of dishonesty or willful wrong established against them.

A careful examination of that case dissipates the thought of its advantage to them, as assumed. So far as it bears analogy to this case, the result is that the conduct of the trustees was regarded as an innocent mistake or error of judgment.

The circumstances were peculiar, but fully sustained the conclusion expressed. Whether the conduct of the defendants complained of was an innocent mistake or a mere error of judgment, it was the province of the jury to determine, and from which they were prevented by the dismissal of the complaint. We think the case should have been submitted to the jury, and that the omission to allow it to be done was error.

Judgment reversed, with costs to abide event.

DAVIS, P. J., and DANIELS, J., concurred.

Judgment reversed and new trial ordered, costs to abide the event.